POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant Li Yunyan*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUDE LIANG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., CMB INTERNATIONAL CAPITAL LIMITED, TENCENT HOLDINGS LIMITED, RICHARD ARTHUR, and COGENCY GLOBAL INC., <br><br> Defendants. | Case No. 2:20-cv-02747-SVW-MAA <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF LI YUNYAN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL <br><br> DATE:  June 29, 2020 <br> TIME:  1:30 p.m. <br> JUDGE:  Stephen V. Wilson <br> CTRM:  10A, 10th Floor |
| HENG HUANG, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, | Case No. 2:20-cv-03914-SVW-MAA |

vs.

DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, TENCENT HOLDINGS LIMITED, and COGENCY GLOBAL INC.,

Defendants.

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...........................................................................1

II.  STATEMENT OF FACTS ................................................................................2

III. ARGUMENT.....................................................................................................10

    A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........................................................................................10

    B.   YUNYAN SHOULD BE APPOINTED LEAD PLAINTIFF ................12

        1.   Yunyan is Willing to Serve as Class Representative ....................... 13

        2.   Yunyan Has the "Largest Financial Interest" ................................... 14

        3.   Yunyan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .......................................................... 15

        4.   Yunyan Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses ................................. 17

    C.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .................................................................................................18

IV.  CONCLUSION..................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) .................................................................................. 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .................................................................................. 11

*Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF,
    2020 WL 264408 (N.D. Cal. Jan. 16, 2020) ................................................................ 15

*Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL),
    2019 WL 4934277 (S.D. Cal. Oct. 7, 2019) ................................................................. 17

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................................................ 15

*In re Comverse Tech., Inc., Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ............................................. 14

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...................................... 11, 12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) .............................................................................. 14

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................. 11

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ....................................................................................... 11

*Karinski v. Stamps.com, Inc.*, CV 19-1828-R,
    2019 WL 8013753 (C.D. Cal. June 5, 2019) ............................................................... 16

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................. 11, 14

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............................................. 14

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ................................................................................ 10

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ........................................... 18

*Richardson v. TVIA, Inc.*, C 06 06304 RMW,
    2007 WL 1129344 (N.D. Cal. Apr. 16, 2007).......................................................... 14

*Vataj v. Johnson*, 19-CV-06996-HSG,
    2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ............................................................. 16

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii) ...........................................................................*passim*

PSLRA ...................................................................................................................... 17

## Rules

Federal Rules of Civil Procedure Rule 23 ..................................................................*passim*

Federal Rules of Civil Procedure Rule 42 ............................................................... 1, 10

Movant Li Yunyan ("Yunyan") respectfully submits this Memorandum of Law in support of her motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Yunyan as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired DouYu International Holdings Limited ("DouYu") American Depositary Shares ("ADSs") pursuant and/or traceable to the Company's Registration Statement (defined below) issued in connection with the Company's July 16, 2019 initial public offering (the "IPO" or the "Offering"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The Related Actions are on behalf of all persons and entities that purchased or otherwise acquired DouYu ADSs pursuant and/or traceable to the Company's Registration Statement issued in connection with the Offering. Each of the Related Actions raises substantially similar allegations—namely, that the defendants violated federal securities laws by issuing false and misleading statements. Accordingly, consolidation of the Related Actions is appropriate.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Yunyan, with losses of approximately $1,015,669 in connection with her purchases of DouYu ADSs, has the largest financial interest in the relief sought in this action to her knowledge.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Ex. A.  Yunyan further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as she is an adequate representative with claims typical of the other Class members.  Accordingly, Yunyan respectfully submits that she should be appointed Lead Plaintiff.

## II.    STATEMENT OF FACTS

As the Complaints in the Related Actions allege, DouYu purports to be "the largest game-centric live streaming platform in China and a pioneer in the eSports value chain."[1]  Operating "on both PC and mobile apps," DouYu offers "immersive and interactive games and entertainment live streaming" to a massive and growing gamer community, particularly in China.  "According to iResearch, China is the world's largest game-centric live streaming market, with approximately 4.9 times the MAUs [monthly active users] of the U.S. market as of 2018."[2]

---

[1] "eSports" is a form of sport competition using video games.

[2] "iResearch" refers to iResearch Consulting Group, a third-party industry research firm that Defendants cite to provide information regarding DouYu's industry and its market position in China.

On April 22, 2019, DouYu filed a registration statement with the SEC on Form F-1, which, after several amendments, was declared effective on July 16, 2019 (the "Registration Statement"). Thereafter, on July 18, 2019, the Company filed a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement (collectively, the "Offering Documents").

The Registration Statement was used to sell to the investing public more than 67.3 million DouYu ADSs at $11.50 per ADS. Defendants generated more than $774 million in gross offering proceeds from their sale of the Company's securities in the IPO.

The Offering Documents used to effectuate DouYu's IPO and secure this sum for Defendants from Plaintiff and the Class (defined below) were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made therein not misleading. Specifically, the Offering Documents failed to disclose that prior to the IPO: (i) DouYu's risks related to its top streamers had materialized, including that (a) a top streamer was actively misrepresenting herself on DouYu's platform, and (b) the costs associated with retaining top streamers was swelling; (ii) DouYu did not ensure that all of its products were fully compliant with current regulatory requirements before those products became available online; and (iii) key interactive features of DouYu's "lucky draw" were non-compliant with current regulatory requirements, requiring DouYu to remove them from operations,

which negatively impacted user engagement activity and caused disappointing financial results.

On July 30, 2019, less than two weeks after DouYu's IPO, BBC News published an article about a Chinese vlogger (known as "Qiao Biluo"), who used a filter to look younger and whose fans were left stunned after a technical glitch during a livestream revealed her to be a middle-aged woman and not the young glamorous girl DouYu users had been "worship[ing]." According to the BBC News article:

> The blogger, who initially boasted *a follower count of more than 100,000 on DouYu*, is believed to have used a filter on her face during her appearances, and had been renowned for her "sweet and healing voice".

> China's Global Times said she had been "worshipped" as a "cute goddess" by *some members of her loyal audience with some fans even giving her more than 100,000 yuan ($14,533, £11,950)*.

> * * *

> The Global Times reports that all was as normal and that her fans urged her to show her face and remove her filter but she refused, instead apparently saying: "I can't show my face until I receive gifts worth 100,000 yuan ($11,950). After all, I'm a good-looking host."

> *Followers began to send her donations with the largest reported to be 40,000 yuan ($5,813, £4,780) during the session*.

> However, at some point, it seems the filter being used by the Vlogger stopped working and her real face became visible to her viewers.

> She is reported to have noticed only when people who had signed up to her VIP access room *started exiting en masse*.

Many of her original followers - especially men - are said to have ***stopped following her and withdrawn their transactions*** after seeing her true identity.

(Emphasis added.)

On July 31, 2019, Mic.com also published a story, titled "Popular Chinese DouYu streamer revealed to be much older thanks to livestream glitch" (the "Mic Article"), on the glitch that revealed the true identity of Qiao Biluo whose DouYu users "fawned over the videos and photos that she uploaded . . . which showed a young woman posing, playing games, and talking to the camera." According to the Mic Article, "***the revelation caused a considerable amount of drama, with many of her male subscribers expressing outrage that they had been tricked. They left the stream in droves, unsubscribed from her account and pulled donations***." (Emphasis added.)

A day later, on August 1, 2019, TechNode, an online information outlet catering to the tech and startup community both inside and outside of China, revealed that DouYu "***banned [Qiao Biluo]*** on Thursday for drumming up hype surrounding her accidental face reveal" (emphasis added). The TechNode article, titled "Douyu bans livestreamer for hyping face reveal," noted how:

- The livestreamer said in an earlier broadcast that she wouldn't show her face until she had received gifts totaling more than RMB 100,000 ($11,950).
- After the incident, the host claimed that the face reveal was planned, saying that she paid RMB 280,000 for it.
- According to the company's statement, the livestreamer's comments "challenged the bottom line of the public and caused negative social

influence." As punishment, Douyu permanently banned her channel and remove all her content.

TechNode also put the incident in context, revealing that a number of well-known Chinese live-streamers have been banned for inappropriate behavior in the past, including "Lu Benwei, *one of Douyu 's most popular hosts, [who] was banned from all live-streaming platforms* by the country's top internet regulator, the Cyber Administration of China, for verbally abusing a content creator who accused him of cheating" (emphasis added).

The media continued to publish accounts of the Qiao Biluo incident over the next few days, often repeating the fact that the glitch caused her followers to unsubscribe en masse and rescind their gifts.

On July 29, 2019, the day before the incident was first reported, DouYu ADSs closed at $10.08 per ADS. After the market absorbed all this information, on August 6, 2019, DouYu ADSs closed at $7.84 per ADS, or down 22.22%.

On August 11, 2019, Bloomberg published an article from the South China Morning Post, profiling Liu Mou ("Liu"), a top streamer who plays exclusively on DouYu and purportedly contributed as much as 3% of DouYu's revenues in the second quarter of 2019 alone. In addition to explaining how DouYu lives and dies on virtual gifts from fans, with "[n]inety-one per cent of Douyu's revenue [coming] from virtual gifts" in the previous quarter, the article warned that "*the cash burn on marketing and retaining top performers has caused investors to question the business model*"

(emphasis added).  Using Liu as an example, the article noted how "Douyu pay[s] top gamers like Liu at least $4 million a year to retain them exclusively" and gives them half of whatever money was spent on "virtual gifts [bestowed upon them] from followers[.]"

The article also warned about the Company's revenues given its focus on locking down and retaining top streamers.  Specifically, the article revealed how "[s]treamers often need to spend their own money to buy fan support[,]" which DouYu recognizes as revenue, but in actuality, DouYu only retains half of that money while "the other half *returns* to [a streamer]'s pocket" (emphasis added).  According to the article, "Douyu's focus on top streamers makes it more susceptible to this [revenue] issue compared to [competitors]."  Further, DouYu's CEO confirmed that these arrangements existed.

On August 13, 2019, DouYu ADSs closed at $8.84 per ADS, falling from $9.93 per ADS the day before, or nearly 11%, before declining even further to $8.14 per share on August 14, 2019.

Then, on October 15, 2019, J.P. Morgan announced in an analyst report that DouYu had temporarily removed its "lucky draw feature in late Aug 2019," before "reinstat[ing]" it "on Oct 10," which, according to J.P. Morgan, "*will cause its 3Q19 revenue to decline 1.5% QoQ . . . 5% below the low end of company's 3Q19 guidance . . . and 7% lower than current Bloomberg consensus*" (emphasis added). J.P. Morgan, which characterized the suspension of luck draw features as a "headwind," stated, in relevant part:

On Aug 20 2019, Douyu started a round of operation changes Which include: 1) removal of lucky draw feature, 2) enhance content monitoring within live broadcasting show room. On Oct 10 2019, DouYu re-launched lucky draw feature after National Day holiday with ***stronger restriction on in-game consumption (cap on virtual gift amount etc). We estimate lucky draw feature to contribute to ~10% of Douyu 's revenue before 3Q19***.

(Emphasis added.)

DouYu closed at $7.12 per ADS on October 16, 2019, or 4.69% lower than the previous day's close of $7.47 per ADS.

On November 27, 2019, DouYu released its third quarter 2019 financial results. During the question-and-answer portion of the earnings call held the same day, the Company addressed the temporary removal of its "lucky draw" features:

**Chun Man Poon** - Morgan Stanley, Research Division - Equity Analyst (foreign language) I'll translate my question. My first question is since ***late August, you have removed certain lucky draw features. And can you let us know the reason why you took it off and also the revenue impact in Q3?*** And also since you have restated these features, how is the revenue run rate at present? Is it better than before you removed these features already? And from here onwards, ***how does the regulatory landscape look like for these features?***

**Shaojie Chen** - *DouYu International Holdings Limited - Founder, CEO & Director*

* * *

[Interpreted]. Okay. Regarding the reason of the temporary removal of our quiz features since August, we have always prioritized the long-term and sustainable growth of DouYu. So in order to contribute to a positive Internet environment, ***our management team made decision to carry out an assessment of certain interactive features in mid-August 2019*** prior to China's anniversary celebration. And ***as a result of our internal assessment, we adjusted certain functions of the interactive product featuring***.

MEMORANDUM OF POINTS AND AUTHORITIES

8

\* \* \*

[Interpreted]. Regarding the revenue impact, *our interactive features, including quiz, were designed to enhance the interaction between the streamers and users*. So consequently, *the removal of certain features has somehow affected users' engagement activity with streamers for a certain period of time in third quarter*. And we -- after revision and improvement, we initially reacted (sic) [activated] part of the features in late third quarter, and we activated the rest in the fourth quarter. So after resuming the access to our interactive features, the users engagement for these interactive features are *gradually recovering*, and we have also factored in all of these into our fourth quarter guidance for 2019.

\* \* \*

[Interpreted]. Regarding future risk adjustment, *we will pay close attention to development laws and regulations issued by the local authorities*, while maintaining active communication with government departments. Thank you.

(Emphasis added and in original.)

The Company's ADSs closed at $7.46 per share on November 29, 2019, the next trading day, representing a decline of over 4.8%.

On January 23, 2020, J.P. Morgan released an analyst report commenting on the suspension of interactive features and crediting the Company's 12% drop in ADS price on January 22, 2020, to investor concerns about "the financial implications of such a broad-based key monetization feature suspension[,]" stating, in relevant part:

[O]n January 22, 2020, all of the listed digital entertainment platforms (Douyu, Huya, . . .) that operate live broadcasting services have *suspended interactive features that drive meaningful monetization for live streaming operators*. Share prices of Douyu/Huya . . . fell by 12%/10% . . . on Jan. 22,

MEMORANDUM OF POINTS AND AUTHORITIES

9

2020, *in our view due to investors' concerns about the financial implications of such a broad-based key monetization feature suspension*. (Emphases added.)

J.P. Morgan added: "We believe investors' cautious sentiment will remain in the near term *due to a lack of clarity on the duration of this suspension[.]*" (Emphasis added.)

In response to the foregoing disclosures, the value of the Company's ADSs has cratered, trading as low as $6.50 per ADS since going public, representing a decline of over 43% from the Offering price.

## III.   ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995

F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at \*4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants).

The Related Actions at issue here clearly involve common questions of law ***and*** fact.  Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of DouYu's ADSs and subsequently damaged the Class when the Company's share price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Knox v. Yingli Green Energy Holding Co. Ltd.,* 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) ("Consolidation of private securities fraud class actions arising from the same alleged misconduct is generally appropriate."); *Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of

securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at \*5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## B.    YUNYAN SHOULD BE APPOINTED LEAD PLAINTIFF

Yunyan should be appointed Lead Plaintiff because, to her knowledge, she has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.   Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Yunyan satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Yunyan is Willing to Serve as Class Representative

On March 24, 2020, counsel for a plaintiff in the first of the Related Actions to be filed caused a notice to be published pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors who acquired DouYu ADSs pursuant and/or traceable to the Company's Registration Statement issued in connection with the Offering that they had 60 days—*i.e.*, until May 26, 2020—to file a motion to be appointed as Lead Plaintiff.  *See* Pafiti Decl., Ex. B.

Yunyan has filed the instant motion pursuant to the Notice, and she has attached a sworn Certification attesting that, *inter alia*, she has communicated with counsel, is willing to serve as a representative for the Class and is willing to provide testimony at deposition and trial, if necessary.  *See* Pafiti Decl., Ex. C.  Accordingly, Yunyan satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Yunyan Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Yunyan believes that she has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered).[3]  The most critical among the *Lax* Factors is the approximate loss suffered.  *See, e.g.*, However, "[o]f the Olsten–Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Knox*, 136 F. Supp. 3d at 1163 (C.D. Cal. 2015); *Richardson v. TVIA, Inc.*, C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).

Pursuant and/or traceable to the Company's IPO, Yunyan (1) purchased 211,305 DouYu ADSs; (2) expended $2,430,008 on her purchases of DouYu ADSs; (3) retained 211,205 of her DouYu ADSs; and (4) as a result of the Company's disclosures, suffered a loss of $1,015,669 in connection with her purchases of DouYu ADSs.  *See* Pafiti Decl.,

---

[3] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

Ex. A.  Because Yunyan possesses the largest financial interest in the outcome of this litigation, she may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Yunyan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Moreover, at this stage "courts need only consider typicality and adequacy." *Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the same essential characteristics as the claims of the class at large. *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).

The claims of Yunyan are typical of those of the Class.  Yunyan alleges, as do all class members, that defendants violated the federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning DouYu, or omitted to state material facts necessary to make the statements they did make not misleading.  Yunyan, as did all members of the Class, purchased DouYu ADSs pursuant and/or traceable to the Company's Registration Statement issued in connection with the Offering at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019).  The class representative must also have sufficient interest in

the outcome of the case to ensure vigorous advocacy.  *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at *3 (S.D. Cal. Oct. 7, 2019)

Yunyan is an adequate representative for the Class.  There is no antagonism between the interests of Yunyan and those of the Class, and her losses demonstrate that she has a sufficient interest in the outcome of this litigation.  Yunyan has submitted a Declaration attesting, *inter alia*, to her desire to prosecute this case for the benefit of the class, to her understanding of a lead plaintiff's responsibilities pursuant to the PSLRA, and to her communications with her counsel prior to the filing of this motion.  *See* Pafiti Decl., Ex. D.  Moreover, in Pomerantz, Yunyan has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits her choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4.    Yunyan Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing Yunyan as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of Yunyan to fairly and adequately represent the Class has been discussed above. Yunyan is not aware of any unique defenses defendants could raise that would render her inadequate to represent the Class.

## C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Yunyan has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Pafiti Decl., Ex. E. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See id.* Most recently, Pomerantz announced as Lead Counsel

on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.*

As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Related Actions, Yunyan's counsel has the skill and knowledge which will enable it to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by Yunyan, the members of the class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Yunyan respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Yunyan as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  May 26, 2020                              POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100

MEMORANDUM OF POINTS AND AUTHORITIES

19

Facsimile:  212-661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184
pdahlstrom@pomlaw.com

*Counsel for Li Yunyan and Proposed Lead
Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/     Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES

21