**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

*Counsel for Lead Plaintiff Movant*
*Safron Capital Corporation*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUDE LIANG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., CMB INTERNATIONAL CAPITAL LIMITED, TENCENT HOLDINGS LIMITED, RICHARD ARTHUR, and COGENCY GLOBAL INC., <br><br> Defendants. | Case No. 2:20-cv-02747-SVW-MAA <br><br> <u>CLASS ACTION</u> <br><br> **SAFRON CAPITAL CORPORATION'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO THE COMPETING MOTIONS** <br><br> Date: June 29, 2020 <br> Time: 1:30 p.m. <br> Judge: Hon. Stephen V. Wilson <br> Courtroom: 10A, 10th Floor |

(captions continue on following page)

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

HENG HUANG, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, TENCENT HOLDINGS LIMITED, and COGENCY GLOBAL INC.,

Defendants.

Case No. 2:20-cv-03914-SVW-MAA

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................... 1

II. ARGUMENT ............................................................................................. 3

    A.    The Competing Movants Do Not Satisfy The Requirements Of The PSLRA, And Their Motions Should Be Denied ..................... 3

        1. Li Has Not Satisfied The Requirements of Rule 23 ..................... 4

            a. Li's Application Lacks Necessary Information To Determine Her Adequacy ........................................................... 4

            b. Li Has Not Demonstrated The Ability To Effectively Manage The Litigation And Oversee Counsel ........................ 7

        2. Boluka Is Inadequate And Subject to Unique Defenses ............. 10

            a. Boluka's Sworn Certification May Not Be Properly Authorized ........................................................... 10

            b. Boluka Is Not An Adequate Lead Plaintiff ........................... 12

    B. Safron Has The Largest Financial Interest of Any Movant That Is Able to Adequately Represent The Class ............................... 13

III. CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................... 4

*Camp v. Qualcomm Inc.,*
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ............................................. 5, 12

*Eichenholtz v. Verifone Holdings, Inc.,*
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .............................................. 8

*In re Boeing Co. Aircraft Sec. Litig.,*
    2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .................................... 2, 5, 6, 7

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ............................................................. 1, 4, 13

*In re Initial Pub. Offering Sec. Litig.,*
    214 F.R.D. 117 (S.D.N.Y. 2002)................................................................... 9

*In re Network Assocs., Inc. Sec. Litig.,*
    76 F. Supp. 2d 1017 (N.D. Cal. 1999)...................................................... 8, 11

*Lloyd v. CVB Fin. Corp.,*
    2011 WL 13128303 (C.D. Cal. Jan. 21, 2011)............................................ 14

*Perez v. HEXO Corp.,*
    2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) .............................................. 12

*Stackhouse v. Toyota Motor Co.,*
    2010 WL 3377409 (C.D. Cal. July 16, 2010) .............................................. 8

**Statutes and Rules**

15 U.S.C. § 77z-1(a)(2)(A) ................................................................................ 10

15 U.S.C. § 77z-1(a)(3)(B)(i) ....................................................................... 1, 13

15 U.S.C. § 77z-1(a)(3)(B)(iii) ................................................................................. 3

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ........................................................................... 1

15 U.S.C. § 77z–1(a)(3)(B)(v) ................................................................................ 11

Safron Capital Corporation ("Safron") respectfully submits this memorandum of law in further support of its motion seeking appointment as Lead Plaintiff, and in opposition to the competing motions filed by Li Yunyan ("Li") and Boluka Garment Co., Limited ("Boluka").

## I.   <u>PRELIMINARY STATEMENT</u>

Three competing motions were timely filed by investors seeking appointment as Lead Plaintiff: (i) Safron; (ii) Li; and (iii) Boluka.  ECF Nos. 23, 27, 31.  On June 8, 2020, Boluka filed a notice with the Court indicating its non-opposition to Li's motion for appointment as Lead Plaintiff.  ECF No. 34.[1]

The PSLRA establishes a presumption that the "most adequate plaintiff" is the investor with the largest financial interest in the relief sought ***and*** that otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 77z-1(a)(3)(B)(i); *see also In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Regardless of the amount of losses they claim, Li and Boluka do not satisfy Rule 23's adequacy and typicality requirements and thus their respective motions to be appointed lead plaintiff should be denied.

Movant Li claims to have the largest financial interest in the case based on claimed losses in excess of $1 million.  ECF No. 33-1.  However, Li has provided no information about herself or her finances that would allow competing movants to verify this claim as contemplated under the PSLRA.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  In addition, despite the submission of a lengthy declaration, Li's counsel has provided no affirmation that it has verified Li's financial claim, as will be required in prosecuting this action.  Rather, Li has offered only the "bare assertion" that she lost $1,015,669 million as a result of purchasing the American

---

[1] While Boluka does not oppose Li's motion, it appears to oppose Safron's motion despite the absence of any specific reason or basis for such opposition.

Depositary Shares of DouYu International Holding Limited ("DouYu" or the "Company") in the Company's initial public offering. *See In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *7 (N.D. Ill. Nov. 15, 2019). In truth, all that is known about Li is that she purportedly resides in Auckland, New Zealand and previously worked under the vague title of "professional manager" of an unidentified company. She provides no other personal details, including whether she may have managed securities investments on behalf of third parties or in connection with any of the Defendants.

The limited details that Li has offered about herself provide "virtually no basis" for the Court to make the necessary determination regarding Li's adequacy to serve as Lead Plaintiff. *Id*. at *5. The need for Li to provide this kind of basic information is "particularly true where, as here, the lead plaintiff applicant is an individual rather than an institutional investor." *Id*. Whether Li's omissions were due to ignorance or deception is of no import as either proposition militates against her adequacy to serve as lead plaintiff. Indeed, "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff process." *Id*. at *5 n.10. These questions regarding Li's adequacy are compounded by concerns that Li may be unable to effectively to oversee this litigation and otherwise fulfill her duties as a Lead Plaintiff while residing over 6,500 miles away in New Zealand. As a result, Li's application is currently beset by deficiencies that render Li unable to satisfy the requirements of Rule 23.

Boluka claims the second largest loss and has indicated its non-opposition to Li, but in doing so states that it should be appointed Lead Plaintiff in the event that Li's motion is not granted. ECF No. 34. However, Boluka is also unable to satisfy the requirements of Rule 23. Among other things, Boluka's sworn certification is purportedly signed by its director, Yue Zhou, who represents that

he is authorized to sign the certification on Boluka's behalf. *See* ECF No. 25-2. Yet, publicly available information indicates that Yue Zhou may have resigned from the role of Boluka's director in 2015, which would render him unauthorized to sign the required certification on behalf of Boluka. In addition, Boluka's initial motion lacks basic information – and redacts other information – about its background and qualifications to be Lead Plaintiff. To that extent, Boluka has failed to present itself for scrutiny and demonstrate its adequacy to serve as Lead Plaintiff in this litigation.

Safron is the only movant for Lead Plaintiff that is otherwise typical and adequate, and immune from unique defenses that will threaten class certification. Safron is a domestic institutional investor incorporated in Delaware, and it satisfies Rule 23's adequacy and typicality requirements. Safron also has experience serving as a lead plaintiff in complex securities class actions, and Safron possesses a certifiable interest in the relief sought by the Class. *See* ECF No. 29-2. Not only does Safron's relative proximity to this action ensure its active involvement in the proceeding, but Safron also has previously served as a Lead Plaintiff under the PSLRA and demonstrated that it is capable of fulfilling the duties and obligations while serving in that role on behalf of a class.[2] Safron's unquestionable adequacy to serve as a representative plaintiff will best serve the putative class in seeking class certification.

II. **ARGUMENT**

A. **The Competing Movants Do Not Satisfy The Requirements Of The PSLRA, And Their Motions Should Be Denied**

The PSLRA establishes a presumption that the "most adequate plaintiff" is

---

[2] For example, in *Silverstrand Investments v. Amag Pharmaceuticals, Inc. et al*, No. 1:10-cv-10470, ECF Nos. 24, 170 (D. Mass. Mar 18, 2010), Safron was appointed as Lead Plaintiff and achieved a favorable resolution to resolve claims on behalf of the class of investors.

the movant with "the largest financial interest in the relief sought by the class" able to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 730. This presumption may be rebutted, however, by demonstrating that the presumptively "most adequate plaintiff" cannot fairly and adequately represent the class, or is "subject to unique defenses." 15 U.S.C. § 77z-1(a)(3)(B)(iii).

The Ninth Circuit has instructed that courts have "wide latitude" under the PSLRA to consider facts concerning a movant's typicality and adequacy under Rule 23 when assessing a challenge that a Lead Plaintiff movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cavanaugh*, 306 F. 3d at 741. The Court is granted this latitude at the Lead Plaintiff selection stage, now, because these issues are likely to be raised by Defendants when challenging class certification later in the case. Indeed, a court's thorough assessment of a movant's adequacy and typicality at the Lead Plaintiff stage ensures that a proposed representative will faithfully fulfill the fiduciary obligations it owes to the class, and that the litigation will not be jeopardized by an investor whose circumstances or interests diverge from those of the class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

## 1. Li Has Not Satisfied The Requirements Of Rule 23

### a. Li's Application Lacks Necessary Information To Determine Her Adequacy

Given the serious consequences of selecting an inadequate or atypical lead plaintiff, courts require unknown individual investors with no prior PSLRA lead plaintiff experience to provide more than the skeletal information contained in a PSLRA certification to evidence satisfaction of the Rule 23 requirements.

For instance, in *Camp v. Qualcomm Inc.*, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019), the Southern District of California denied an individual movant's motion for lead plaintiff despite having a larger loss than any other movant because the individual "failed to include any basic details about himself, including where he lives or who he is specifically in his motion." *Id.* at *2-*3. In doing so, the court stressed that such a lack of information made it "difficult to determine whether [the individual movant] would indeed be a typical plaintiff for the class." *Id.* at *3.

Similarly, in *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019), the court denied the motion of a the Wang family trust even though the family alleged a larger loss than any other movant because their motion "provide[d] virtually no information about the family . . . beyond that required by their certifications" and the city in which they resided. *Id.* at *5. In reaching this conclusion, the court recognized that it was "incumbent on the [movants] to make a preliminary showing of their adequacy" and, therefore, "a movant must supply some information about its ability to perform the role of lead plaintiff diligently and effectively." *Id.* at *5 n.8. To that end, ***names and a city of purported residence alone provided "virtually no basis" for the court to make the necessary adequacy determination.*** *Id.* at *5 (emphasis added). Consequently, the court in *Boeing* rejected the family's motion and instead appointed a movant with less alleged losses – an institutional investor. In doing so, the court indicated that "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff process." *Id.* at *5 n.10.

Here, the dearth of information Li provides is particularly troubling given her significant alleged loss of over $1 million, as well as the fact that Li has no experience or credentials indicating that she is qualified to serve as Lead Plaintiff.

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION                                              -5-
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

All that Li reveals is that she resides in New Zealand, purports to be a retired "professional manager," and claims to have been investing in the securities market for five years. *See* ECF No. 25-4. Li provides no details about her role as a "professional manager," including whether she may have managed securities investments on behalf of third parties or in connection with Defendant DouYu – which would give rise to disqualifying unique defenses.

The size and timing of Li's purchases warrant, at minimum, a reasonable explanation and, at most, verifiable documentation to support the losses she claims. This importance of providing such information was recognized the court in *Boeing*, which denied the motion of the presumptive lead plaintiffs because their "bare assertion" to have suffered a $4.7 million loss from purchasing Boeing stock was "too incredible to accept at face value." *Boeing*, 2019 WL 6052399, at *7. Similarly, Li's vagueness about her company and experience has "raised so many red flags that the Court cannot in good conscience appoint [Li] to lead this complex, significant, and highly public litigation on behalf of thousands of [] investors." *Id*.

Li's lack of transparency also undermines the fundamental purpose of the lead plaintiff appointment process wherein movants are vetted by other movants in an effort to identify the "most adequate plaintiff." The absence of such basic information calls into question Li's adequacy, as "***a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff process[.]***" *Id*. at *5 n.10 (emphasis added).

The information Li did provide was included in a declaration filed with her initial application. But the declaration is simplistic and deliberately vague such that its purpose seems be in the interest of protecting Li's counsel rather than demonstrating Li's adequacy. At the very least, information about Li herself is

noticeably absent from an otherwise detailed declaration on Li's counsel's diligence.

The exclusion of basic information in Li's initial filing might be reasonably excused in the event that information happened to be publicly available or could be ascertained through reasonable effort – but it is not. Given Li's common name, both the Court and the remaining competing movants are hampered in carrying out their own independent analysis to determine, among other things, details of Li's former occupation and employer, ties to Defendant DouYu (and other Defendants), investment experience, whether she has any experience overseeing lawyers in complex litigation, or if she has any civil or criminal infractions that may undermine her ability to serve as a fiduciary. While Li reports to have the personal means to purchase over $2 million of DouYu securities, absent her willingness to be more forthcoming with additional information, it is unlikely that the Court and the other movants will learn these important details prior to discovery.

"Whatever the reasons for the [Li's] reticence about [her] background, [Li's] unwillingness to provide any significant information about [herself] has made clear that [Li] place[s] priority on [her] privacy over leading this litigation[.]" *Boeing*, 2019 WL 6052399, at *7. As such, it would be imprudent for the Court to appoint Li as Lead Plaintiff.

### b. Li Has Not Demonstrated The Ability To Effectively Manage The Litigation And Oversee Counsel

Li's candidacy is also plagued by the practical and logistical considerations associated with a foreign Lead Plaintiff under current circumstances and international travel restrictions related to the Covid-19 pandemic. To the extent that Li resides in and is a citizen of New Zealand, she will be removed from this litigation by a distance of over 6,500 miles. As this litigation unfolds, it could be

impossible for Li to travel to California when called upon to fulfill her duties as a class representative.

Pragmatically, the "fitness of [Li] to be lead plaintiff is further compounded by . . . esoteric United States securities laws and problems inherent in communicating across continents." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10 n.8 (N.D. Cal. Aug. 22, 2008) (specifically noting that the "entity's physical distance from this forum may create practical difficulties that may make it difficult for it to be the class representative"). Indeed, courts in this District have noted the importance of a Lead Plaintiff's attendance at litigation proceedings and asked for a representative of a Lead Plaintiff institutional investor to appear at a Lead Plaintiff and lead counsel hearing "to answer any questions the Court may pose." *See Stackhouse v. Toyota Motor Co.*, 2010 WL 3377409, at *2 (C.D. Cal. July 16, 2010) (J. Fischer).

In another example, the Northern District of California found that two movants domiciled in Europe could not "fairly and adequately represent the class":

> Finally, both ING and KBC are foreign organizations. They are distant. . . . The distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California. At trial, the representative plaintiff would normally testify and attend. In a long trial, it would be obviously difficult for ING or KBC to attend in its entirety. . . . these factors, when added to the others set forth above, reinforce the Court's conclusion that neither KBC nor ING can fairly and adequately represent the class.

*In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999).

Even if Li could manage the impracticalities of participating in a litigation pending in California on a solitary basis, the Class should not have to bear the unnecessary additional risk involved in having a New Zealand investor designated as the lone Lead Plaintiff. Li's inexperience and distance are inherent limitations

on her ability to manage and oversee this litigation and allowing her to serve as the sole Lead Plaintiff casts serious doubt about whether she or her lawyers will be the ones controlling this litigation. Such an outcome would directly contradict with a principle purposes of the PSLRA, which is to ensure securities litigation is *investor-driven*, as opposed to *lawyer-driven*. *See* S. Rep. No. 104–98 at 4 (1995), U.S. Code Cong. & Admin. News 1995, at 679, 683 (finding that the purpose of the PSLRA is "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation"); s*ee also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (explaining that "the purpose [of the PSLRA] was to ensure that securities litigation was investor-driven, as opposed to lawyer-driven.").

Indeed, even at this early stage of the litigation, there are signs that Li's motion is purely the product of Li's counsel rather that of Li. Li's chosen counsel has submitted filings in this matter on behalf of two separate investor who by all appearances are unrelated. Specifically, after Li signed her sworn certification on March 27, 2020, Li's counsel commenced with representation of second investor with significantly smaller losses, plaintiff Huang ("Huang"). Huang signed a sworn certification on March 31, 2020 – just four days after Li had signed hers. Then, on April 24, 2020, more than a month after the initial *Liang* complaint had been filed, Li's counsel filed a second complaint on behalf of Huang which contained fewer allegations than the *Liang* complaint, but is otherwise identical.[3] These maneuverings by Li's counsel militate against the notion that Li – an investor with no previous experience as a lead plaintiff and who resides more than 6,500 miles from this action – is capable of managing this litigation and overseeing class counsel in this complex securities class action litigation.

---

[3] *See Huang v. DouYu International Holdings Limited et al.*, No. 2:20-cv-03914, ECF No. 1 (C.D. Cal. Apr. 24, 2020) (Wilson, S.)

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION                    -9-
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

### 2. **Boluka Is Inadequate To Serve As Lead Plaintiff**

#### a. **Boluka's Sworn Certification May Not Be Properly Authorized**

The first issue in Boluka's application relates to the PSLRA's requirement that each plaintiff to provide "a sworn certification, which shall be personally signed by such plaintiff." 15 U.S.C. § 77z-1(a)(2)(A). Boluka's certification bares the purported signature of its director, Yue Zhou. *See* ECF No. 25-2. Zhou's certification "represents and warrants that he/she/it is fully authorized to enter into and execute this certification." *Id.* It is not entirely clear where Boluka is domiciled because its certification redacts its address and also fails to provide any other information with its motion. However, there is a "Boluka Garment Co. Limited" registered on Hong Kong's Integrated Companies Registry Information System ("ICRIS"). *See* Berg Opp. Decl., Exhs. 1, 2 (Boluka's incorporation documents).[4] Moreover, Boluaka's corporate filings on ICRIS indicate that ***Yue Zhou resigned as director of Boluka in 2015***. *See* Berg Opp. Decl., Exhs. 3, 4 (notifications of Yue Zhou's appointment and cessation as Boluka's director).

Currently, the only other person listed as a director for Boluka is "Jiaping Zhou," who has an address in China, who appears to have been a director since the time Boluka was incorporated and has a different Chinese citizen ID number. If true, Yue Zhou appears not have been authorized to sign the certification on behalf of Boluka on April 12, 2020.

Given this apparent inconsistency in its initial filing with this Court, there are questions about whether Boluka and its counsel can adequately protect the interests Class. It also raises questions whether it is Boluka or its counsel who is

---

[4] *See* Exhibits ("Exh.") 1 and 2 of the Declaration of Ian D. Berg in Further Support of Safron Capital Corporation's Motion for Appointment as Lead Plaintiff and in Opposition to the Competing Motions ("Berg Opp. Decl."), submitted herewith.

controlling the case, as one of the fundamental goals of the PSLRA is to "empower investors so that they – not their lawyers – exercise primary control over private securities litigation." *See* S. Rep. No. 104–98 at 4 (1995), U.S. Code Cong. & Admin. News 1995, at 679, 683.  One of the explicit responsibilities of a lead plaintiff is to select and direct class counsel.  *Id*. at 679, 690; *see also* 15 U.S.C. § 77z–1(a)(3)(B)(v).

To that end, Boluka's counsel maintains a website that lists pending securities class actions and encourages investors to complete a form that resembles a claims form and is nearly identical to the certification that Boluka has filed in this action.  *See* Berg Opp. Decl., Exh. 5; *see also* http://www.rosenlegal.com/cases-register-1810.html (last visited June 8, 2020). The website maintained by Boluka's counsel also incorporates by reference a retainer agreement for counsel's representation that the investors agree to upon submitting the certification form.  The Northern District of California, among others, has voiced concern that this practice could potentially mislead some investors given that "many send in the forms thinking they need to in order to participate in any recovery practice in the oft cited case." *Network Associates*, 76 F. Supp. 2d at 1022.  This concern is heightened when there may be language barriers or translation issues.

If Yue Zhou completed one of these forms on Boluka's counsel's website, there are questions related to whether he understood what he was agreeing to on Boluka's behalf at the time that he submitted the form.  It should be noted that Boluka is a lead plaintiff in another action where the application was unopposed.[5] But, as in this case, there are no filings in that case indicating that Boluka intended to be a lead plaintiff rather than just participate or that it otherwise controls its

---

[5] *See Boluka Garment Co., Limited, et al v. Canaan, Inc. et al.*, No. 3:20-cv-00356, ECF Nos. 13, 20 (D. Or. Mar 04, 2020).

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION                                    -11-
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

counsel.    Ultimately,  more  information  would  need  to  be  known  about  the circumstances  by  which  Boluka  came  to  be  represented  by  its  counsel  before Boluka can be deemed adequate to serve as Lead Plaintiff.

### b.  Boluka Is Not An Adequate Lead Plaintiff

Even assuming the validity of Boluka's application, Boluka did not provide meaningful details in its initial filing to demonstrate its adequacy, including, but not limited to, its domicile, business operations, or its investment experience or the purpose of its investments.  *See Qualcomm*, 2019 WL 277360, at *3 (denying an individual movant's motion for lead plaintiff despite alleging a larger than any other  movant  because  the  movant  "failed  to  include  any  basic  details  about himself, including where he lives or who he is specifically in his motion").

As referenced above, other courts have denied the motions of investors that provide such a dearth of information.  For example, the Southern District of New York recently held that an individual with the largest alleged loss had not met the requirements  of  Rule  23  because  the  movant's  initial  motion  provided  no information about the movant whatsoever.  *See Perez v. HEXO Corp.*, 2020 WL 905753 at *3 (S.D.N.Y. Feb. 25, 2020).  In denying the movant's application, that court in *HEXO* recognized that "an investor seeking to be appointed lead plaintiff – though he need only make a preliminary showing that he [or she] satisfies the requirements of Rule 23 . . . nonetheless need[s] to provide enough information to make [that] preliminary showing." *Id*. at *2.  In an effort cure his deficient application, the movant submitted a belated declaration identifying his residence, education level, occupation, and investing experience.  *Id*. at *3.  But as the Southern District held, given the movant's "failure to provide any information regarding his experience in his preliminary motion, the Court questions whether [he]  will  meaningfully  oversee  and  control  the  prosecution  of  this  consolidated class action." *Id*.

Furthermore, there are potential issues associated with Boluka potentially residing in China, which is approximately 6,000 miles from this action and currently subject to travel restrictions because of the Covid-19 pandemic, as well as President Donald Trump's administration's recent announcement that Chinese passenger carriers will be greatly limited to flying to the United States.  *See, e.g.,* Associate Press, "US will allow limited flights by Chinese airlines, not impose a ban." *Los Angeles Times*, June 5, 2020. https://www.latimes.com/politics/story/2020-06-06/coronavirus-china-airline-limits-trump (last visited June 8, 2020).  These recent developments threaten to limit Boluka's involvement in this litigation to such a serious extent that it will be unable to fulfill the duties and obligations incumbent of a Lead Plaintiff.

### B. Safron Has The Largest Financial Interest Of Any Movant That Is Able to Adequately Represent The Class

Because both competing movants have been shown to be inadequate, the Court must shift its analysis to Safron, the sole remaining movant that timely moved and is qualified for appointment as Lead Plaintiff.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(i); *see also Cavanaugh*, 306 F.3d at 730-31.

Under Rule 23(a)(4), the representative party must fairly and adequately protect the interests of the class.  Here, Safron has a verifiable financial interest in the claims asserted in this action, is strongly incentivized to prosecute all of investors' claims against all potential defendants, and is not subject to any potential conflicts or unique defenses. Having purchased 500 American Depositary Shares of DouYu International Holding Limited in the Company's initial public offering, Safron has a genuine financial interest in the relief sought. Safron's interests also closely align with those of the Class, and Safron is committed to achieving the maximum possible recovery of investors' claims in this litigation.  Safron's qualifications are evidenced by its previous experience

serving as lead plaintiff of a securities class action in which it was able to achieve a favorable resolution for the class of investors.[6]

In addition, Safron, as an institutional investor with a real financial interest in the litigation, is paradigmatic of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions"); *Lloyd v. CVB Financial Corporation*, 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (Morrow, J.) (noting that the PSLRA "establishes a preference that sophisticated institutional investors direct the course of securities cases").

Finally, Safron has also demonstrated its adequacy through its selection of Abraham, Fruchter & Twersky as Lead Counsel. Abraham, Fruchter & Twersky is highly qualified and experienced in the area of securities class action litigation and has demonstrated an ability to prosecute complex securities class action litigation effectively.

To the extent additional information becomes available which demonstrates Li's adequacy to serve as a Lead Plaintiff, Safron requests to be appointed as a Co-Lead Plaintiff with Li. Safron's experience serving as a lead plaintiff, familiarity with United States securities laws, and proximity to this action as compared to Li, appointing Safron as a Co-Lead Plaintiff will provide an invaluable benefit and further ensure that the litigation is vigorously prosecuted and the Class adequately represented.

---

[6] *See Silverstrand Investments v. AMAG Pharmaceuticals, Inc. et al.*, No. 1:10-cv-10470, ECF Nos. 24, 170 (D. Mass. Mar 18, 2010).

MEMO IN FURTHER SUPPORT OF SAFRON'S MOTION                    -14-
FOR APPOINTMENT AS LEAD PLAINTIFF
Case No. 2:20-cv-02747-SVW-MAA

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Safron respectfully request that the Court grant its motion in its entirety.

Dated: June 8, 2020                 Respectfully submitted,

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**

/s/ *Ian D. Berg*
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

*Counsel for Lead Plaintiff Movant
Safron Capital Corporation*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 8, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ *Ian D. Berg*

IAN D. BERG (SBN 263586)
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582
IBerg@aftlaw.com
