POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant Li Yunyan*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUDE LIANG, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., CMB INTERNATIONAL CAPITAL LIMITED, TENCENT HOLDINGS LIMITED, RICHARD ARTHUR, and COGENCY GLOBAL INC.,<br><br>      Defendants. | Case No. 2:20-cv-02747-SVW-MAA<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF LI YUNYAN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION<br><br>DATE:  June 29, 2020<br>TIME:  1:30 p.m.<br>JUDGE:  Stephen V. Wilson<br>CTRM:  10A, 10th Floor |

*- caption continues on following page -*

MEMORANDUM OF POINTS AND AUTHORITIES

HENG HUANG, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, WENMING ZHANG, CHAO CHENG, MINGMING SU, HAO CAO, TING YIN, HAIYANG YU, XI CAO, XUEHAI WANG, ZHAOMING CHEN, ZHI YAN, TENCENT HOLDINGS LIMITED, and COGENCY GLOBAL INC.,

Defendants.

Case No. 2:20-cv-03914-SVW-MAA

MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   ARGUMENT...................................................................................................5

      A.    Safron Has Not Rebutted The Statutory Presumption That Yunyan Is
            The "Most Adequate Plaintiff" ...............................................................5

      B.    There Is No Basis On Which To Grant Safron's Motion ........................8

III.  CONCLUSION................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrade v. Am. Apparel, Inc.*, NO. 10-06352 MMM,
    2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011)........................................ 1, 6

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ................................................................................. 6

*Gross v. AT&T Inc.*, 19-CV-2892 (VEC),
    2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019) .................................. 3, 8, 9

*In re Critical Path*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................. 5, 11

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................... 5, 11

*In re Texlon Corp. Secs. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ...................................................................... 11

*Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS),
    1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 11, 1998)...................................... 4, 10

*Tumolo v. Cymer, Inc.*, NO. 98-CV-1599 TW (POR),
    1999 U.S. Dist. LEXIS 22105 (S.D. Cal. Jan. 22, 1999) ....................................... 5, 11

## Statutes

15 U.S.C. § 78u-4................................................................................................... 1, 6, 8

PSLRA ...............................................................................................................*passim*

## Rules

Fed. R. Civ. P. 23 ....................................................................................................... 6, 8, 9

Movant Yunyan[1] respectfully submits this reply Memorandum of Law in further support of her motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of her selection of Pomerantz as Lead Counsel (Dkt. No. 31); and in opposition to the competing motion of Safron (Dkt. No. 27).

## I. PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii).   This presumption can *only* be rebutted upon proof that the movant with the largest financial interest is atypical or inadequate.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).   Mere speculation or innuendo is insufficient to rebut this presumption.  *See*, *e.g.*, *Andrade v. Am. Apparel, Inc.*, NO. 10-06352 MMM (PJWx), 2011 U.S. Dist. LEXIS 79795, at \*40-\*41 (C.D. Cal. Mar. 15, 2011).

Here, Yunyan is clearly the movant with the greatest financial interest in the subject matter of this litigation, with *losses of roughly $1.02 million* incurred as a result of the alleged fraud.   Recognizing as much, one of the two movants that initially filed motions for Lead Plaintiff appointment in this action—Boluka, having alleged the second-largest

---

[1] All capitalized terms herein are defined in Yunyan's moving and opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 32, 35.

loss after Yunyan—subsequently abandoned its motion. *See* Dkt. No. 34. Only Safron continues—baselessly—to contest Yunyan's appointment.

Having incurred a loss of only $2,405 in connection with the alleged fraud at issue in this litigation—approximately ***0.02%*** of the loss incurred by Yunyan—Safron can only resort to meritless attacks on Yunyan's adequacy in a meritless effort to disqualify her from consideration, while inaccurately touting Safron's own supposed qualifications. Yet Safron's arguments find no support whatsoever in either the law or the facts before the Court.

***First***, Safron asserts that Yunyan "has provided no information about herself or her finances[.]" Dkt. No. 36 at 1. Yet Safron's assertion is demonstrably untrue, because Yunyan has, in fact, made a robust showing on both counts. With respect to her finances, Yunyan timely complied in full with the statutory requirements, having submitted both the requisite schedule of her Class Period transactions in DouYu securities (Dkt. No. 33-3 at *4) and a detailed chart reflecting her financial interest in this matter in terms of the *Lax* factors routinely considered by courts at the lead plaintiff appointment stage of PSLRA actions (Dkt. No. 33-1). With respect to information about herself, Yunyan has submitted a detailed declaration attesting to, *inter alia*, her personal and professional background, her decision to seek appointment as Lead Plaintiff in this litigation, her understanding of the responsibilities of a lead plaintiff, and the steps that she plans to take to supervise counsel and prosecute this action on behalf of the Class. *See generally* Dkt.

MEMORANDUM OF POINTS AND AUTHORITIES

2

No. 33-4.  Safron's purported concerns about the supposed "dearth of information" provided by Yunyan are, in general, conspicuously non-specific.  Moreover, as discussed in greater detail below, Safron's insistence that Yunyan tell the Court more about herself is ironic, considering that Safron has provided the Court with essentially *zero* information about *itself*.

*Second*, even assuming, *arguendo*, that the Court were to consider Safron's own adequacy to serve as Lead Plaintiff (an unnecessary inquiry, given that the "most adequate plaintiff" presumption in favor of Yunyan remains unrebutted), Safron has strikingly failed to make even the minimal *prima facie* showing of adequacy required at this stage of the litigation, which alone would mandate denial of its motion.  Safron has put literally *nothing* before the Court attesting to its own background, business activities, or operations, or the identity of its principal(s).  It describes itself—for the first time, in its opposition brief—as "incorporated in Delaware" (Dkt. No. 36 at 3). but has provided no supporting documentation for this assertion in the form of a sworn statement or certificate of incorporation.  Even the signature on Safron's Certification is illegible and unaccompanied by the signatory's printed name, leaving the Court guessing as to precisely whom will be overseeing this Action on its behalf.  *See* Dkt. No. 29-2 at *3. Courts have denied PSLRA motions under similar circumstances.  *See*, *e.g.*, *Gross v. AT&T Inc.*, 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777, at *5-*6 (S.D.N.Y. June 24, 2019) (denying motion by investor that "failed to provide any information . . . as to

MEMORANDUM OF POINTS AND AUTHORITIES

3

its business, management [or] structure"). Moreover, given Safron's nonexistent showing in this respect, its purported concerns about the supposed "dearth of information" in Yunyan's own motion appear highly disingenuous.

Safron characterizes itself as a "paradigmatic" institutional investor "of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA," suggesting that this somehow entitles it to appointment over Yunyan. Dkt. No. 36 at 14. This argument is doubly unavailing. As a preliminary matter, while the legislative record reflects a Congressional aspiration that the PSLRA would encourage institutional investors to serve as Lead Plaintiffs in securities class actions, the statute itself does not so much as mention institutional investors, let alone privilege them. *See*, *e.g.*, *Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705, at \*14 (S.D. Cal. Sept. 11, 1998). Moreover, Safron in any event is not the type of institutional investor that Congress envisioned serving as a lead plaintiff. There is nothing to indicate, for example, that it has a sophisticated in-house legal department capable of overseeing counsel, and its financial interest in this matter is clearly *de minimis*. Moreover, with no information as to how much Safron has under management, whom its principle investors are, or the identity and sophistication of its management, there is no evidence whatsoever that Safron is anything more than a shell entity with *de minimis* investments under management. In other words, Safron appears to possess none of the features of the types of institutional investors that Congress hoped to encourage to serve as lead plaintiffs in enacting the PSLRA. *See*, *e.g.*,

*In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999); *In re Critical Path*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001); *Tumolo v. Cymer, Inc.*, NO. 98-CV-1599 TW (POR), 1999 U.S. Dist. LEXIS 22105, at *4 (S.D. Cal. Jan. 22, 1999). Taking Safron at its word—as one must, considering the dearth of information in its submissions to date—it appears to be merely an entity incorporated in Delaware, engaged in activities as to the nature of which one can only guess. *See* Dkt. No. 36 at 3. Safron has failed to explain why any of the foregoing entitles it to appointment as Lead Plaintiff over Yunyan, who has made a robust showing of her adequacy, the presumptive Lead Plaintiff pursuant to the unambiguous appointment procedure set forth in the PSLRA.

Accordingly, for the reasons set forth herein and in her moving and opposition briefs (Dkt. Nos. 32, 35), Yunyan respectfully requests that the Court grant her motion in its entirety and deny the competing motion of Safron.

## II.   ARGUMENT

### A. Safron Has Not Rebutted The Statutory Presumption That Yunyan Is The "Most Adequate Plaintiff"

As discussed at length in her opposition brief (Dkt. No. 35), Yunyan possesses the largest financial interest in this litigation by an overwhelming margin ($1.02 million compared to Safron's loss of $2,405) and has more than made the requisite *prima facie* showings of her typicality and adequacy. As such, Yunyan is entitled to the statutory presumption that she is the "most adequate plaintiff" of the Class, and as such should be appointed Lead Plaintiff. The presumption in favor of Yunyan may only be rebutted by

*proof*—mere speculation or innuendo is insufficient.  *See*, *e.g.*, *Andrade*, 2011 U.S. Dist. LEXIS 79795, at *40-*41 (C.D. Cal. Mar. 15, 2011) ("'speculative assertions are insufficient to rebut the presumption' regarding the most adequate plaintiff.") (quoting *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997)).

In a last-ditch effort to secure a leadership role in this litigation, Safron casts several baseless aspersions upon Yunyan's adequacy to serve as Lead Plaintiff within the meaning of Rule 23.  First, Safron mischaracterizes Yunyan's proffer as to her background as "skeletal," claims that "[t]he size and timing of Li's purchases warrant . . . a reasonable explanation," and accuses Yunyan of a "lack of transparency."  Dkt. No. 36 at 3, 5-6. Second, Safron questions Yunyan's supervision of counsel and her ability to oversee this litigation.  Yet each of these arguments is wholly at odds with both the law and the facts before the Court, and thus falls well short of the "proof" required to rebut the presumption in Yunyan's favor.

*Yunyan has made a robust proffer regarding her background that more than satisfies the* **prima facie** *showing of adequacy required at this stage of the litigation*. The PSLRA requires only that Yunyan submit a Certification appending a schedule of her Class Period transactions in DouYu securities.  *See* 15 U.S.C. § 78u–4(a)(2).  Not only did Yunyan timely file the required Certification and transaction schedule, she went above and beyond the statutory requirement by also submitting a Declaration attesting to, *inter alia*, her biographical information,  her decision to seek appointment as lead plaintiff, her

understanding of the attendant responsibilities, and her discussions with counsel prior to filing her motion. *See generally* Dkt. No. 33-4. And while Safron demands "a reasonable explanation" of Yunyan's investments in DouYu, Yunyan, again, submitted a schedule of her Class Period transactions (Dkt. No. 33-3), as well as a detailed analysis of her financial interest in this matter expressed in terms of the *Lax* factors—*i.e.*, securities acquired, funds expended, securities retained, and financial loss incurred. *See* Dkt. No. 33-1. Safron's characterization of this robust proffer as "skeletal" is thus clearly at odds with the uncontroverted facts before the Court. It is unclear what, precisely, Safron fails to comprehend about Yunyan's submissions, and its demands for more information amount to accusing Yunyan of submitting false statements under penalty of perjury. Yunyan respectfully submits that Safron's apparently deliberate obtuseness in this respect sounds in bad faith, and that given Safron's conduct thus far, no amount of information seems likely to demonstrate Yunyan's adequacy to Safron's satisfaction. The foregoing only calls into question Safron's own fitness to serve as a fiduciary.

***Yunyan is fully capable of supervising her chosen counsel in this action***. There is no basis in the record to question Yunyan's ability to supervise her counsel. Her Declaration attests that she made the informed decisions to retain Pomerantz as counsel in this action and to instruct Pomerantz to file a lead plaintiff motion on her behalf following conversations with a Pomerantz attorney, and further attests to the steps that she will continue to take to supervise counsel and prosecute this action if appointed as Lead

Plaintiff. *See* Dkt. No. 33-4 ¶¶ 3-5. Again, baselessly questioning Yunyan's capacity to supervise her counsel against all evidence to the contrary further evinces a lack of good faith on the part of Safron.

**B.    There Is No Basis On Which To Grant Safron's Motion**

There is no basis whatsoever in either the PSLRA or federal jurisprudence upon which to grant Safron's motion and appoint it as Lead Plaintiff in this action. There is no dispute that pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Safron satisfies *neither* of these two statutory criteria.

First, Safron plainly does not possess the largest financial interest in this matter within the meaning of the PSLRA. Its loss of $2,045 is roughly 0.2% of the *$1.02 million* loss incurred by Yunyan. This fact alone mandates denial of Safron's motion.

Second, even assuming *arguendo* that Safron did possess a larger financial interest than Yunyan, Safron's motion would still fail because Safron has not made the requisite *prima facie* showing of adequacy required at this stage of the litigation. Despite by now having had two opportunities to do so, Safron has made literally no proffer as to, *inter alia*, the identities of its principals or executive management nor, the nature of its business or investment activities. The Southern District of New York's recent decision in *AT&T* is instructive. There, the Court denied the motion of an investor, Pro-Alpha Investments

MEMORANDUM OF POINTS AND AUTHORITIES

8

Limited ("Pro-Alpha"), finding that it had "not provided sufficient information for the Court to determine that it 'will fairly and adequately protect the interests of the class.'" 2019 U.S. Dist. LEXIS 225777 at *5 (quoting Fed. R. Civ. P. 23(a)(4)).

> [I]t is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation. And when challenged on this point, Pro-Alpha failed to respond with a single piece of additional information, which, as a purported "sophisticated investor," should have been easy to do. The Court declines to appoint as lead-plaintiff an entity that lacks basic transparency even at this juncture.

*Id.* at *6 (internal citations omitted).

Here, like Pro-Alpha, Safron has provided no information as to its business, management or structure—and while Pro-Alpha at least provided the name of a single director, Safron has not managed to make even that minimal showing. These deficiencies in Safron's proffer are particularly glaring in light of the standards that it demands the Court apply to Yunyan's motion (which standards, in any event, Yunyan satisfies). Consider the following statements by Safron:

- "***Courts require . . . more than the skeletal information contained in a PSLRA certification to evidence satisfaction of the Rule 23 requirements.***" Dkt. No. 36 at 4. Here, as discussed above, Yunyan has made a robust showing well beyond that required by the PSLRA. *See generally* Dkt. No. 33-4. Safron's showing, by contrast, somehow manages to be less than skeletal. It has provided only the statutorily required shareholder Certification, the signature on which is wholly illegible and is unaccompanied by the signatory's printed name or title. It is thus entirely unclear who has signed Safron's Certification, let alone whether that individual even has authority to bind Safron and enter into litigation on its behalf, and which individual within Safron will be overseeing the litigation on its behalf

- "*[I]nformation about [Yunyan] herself is notably absent from an otherwise detailed declaration[.]*" Dkt. No. 36 at 6-7. Not so. Yunyan's Declaration attests—under penalty of perjury—to her professional and personal background. Dkt. No. 33-4 ¶ 2. Safron, for its part, has made ***no showing whatsoever*** as to the identity of its principal(s)—again, it is not even clear who signed Safron's Certification. Safron has provided no information as to its business, operations, and/or investment activities—a puzzling omission, considering that Safron appears to consider highly detailed information about Yunyan's own employment history to be absolutely essential to the Court's determination of Yunyan's adequacy. Literally the only information proffered with respect to Safron is that it is incorporated in Delaware—and again, this purported fact is presented in passing only once in Safron's opposition brief, unsupported by any sworn statement or certificate of incorporation submitted to the Court.

Safron essentially demands that the Court apply a flagrant double-standard—insisting that Yunyan provide even more (generally unspecified) information about herself, while making literally ***zero*** proffer of its own.

Nor does Safron's self-proclaimed status as an "institutional investor" add anything to the analysis. First, while encouraging sophisticated institutional investors to serve as lead plaintiffs in securities class actions was among Congress's goals in enacting the PSLRA, the PSLRA itself does not even mention, let alone privilege, institutional investors. *See*, *e.g.*, *Reiger*, 1998 U.S. Dist. LEXIS 14705, at *14 ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute."). Courts that have addressed this issue directly have held that:

> The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial

loss and saved the Court from the need to engage in the very analysis it undertakes here. Instead, Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820-22 (N.D. Ohio 1999) (citations omitted).

Second, Safron is not even the type of institutional investor that Congress sought to encourage to serve as lead plaintiffs. Congress's rationale in this respect was that institutions would be more likely to "possess the sophistication, expertise and resources to manage securities litigation efficiently." *Network Assocs.*, 76 F. Supp. 2d at 1025. Such institutions would have, "presumably, an in-house legal team", *Critical Path*, 156 F. Supp. 2d at 1109, and with larger investment portfolios, might be more likely to have a "substantial stake in the litigation" than an individual investor—thus the PSLRA's "largest financial interest" requirement. *Cymer*, 1999 U.S. Dist. LEXIS 22105, at \*4. Here, however, Safron's financial stake in this action is clearly minimal relative to Yunyan's. Safron has made no showing that it possesses any in-house legal department, let alone a sophisticated one capable of supervising its chosen counsel. Indeed, after two rounds of briefing, one is still left wondering precisely what sophistication, resources, personnel and assets under management Safron possesses, and precisely who will be overseeing this litigation on its behalf. Based on the less than scant evidence provided by Safron to date, it is more than likely that Safron is a small shell company controlled by an individual investor rather than the "institutional investor" that it has labeled itself. In sum, there is

simply ***nothing*** to support Safron's characterization of itself as a "paradigmatic" institutional investor of the sort that Congress sought to encourage to serve as class representatives.

## III.   CONCLUSION

For the foregoing reasons and for the reasons set forth in her moving and opposition briefs (Dkt. Nos. 32, 35), Yunyan respectfully requests that the Court grant her motion in its entirety and deny the competing motion of Safron.

Dated:  June 15, 2020                             POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184
pdahlstrom@pomlaw.com

*Counsel for Li Yunyan and*
*Proposed Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/    Jennifer Pafiti*
Jennifer Pafiti